**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| **Brian Simon,** *individually, and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>**Zip Capital Group, LLC**,<br>**Amerifi Capital Group,**<br>**GreenVine Group,**<br>**Tenthly LLC,**<br>**Jaydee Ventures, LLC a/k/a "1West",**<br>**Spark Financial LLC**<br><br>Defendants. | Civil Action No.  3:25-cv-00644-MGL<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff, Brian Simon ("Plaintiff" or "Mr. Simon"), and on behalf of all others similarly situated, by and through the undersigned attorneys, submits this Class Complaint against Defendants Zip Capital Group LLC ("Zip Capital"), Amerifi Capital Group ("Amerifi"), GreenVine Group ("Greenvine"), Tenthly LLC ("Tenthly"), Jaydee Ventures, LLC a/k/a "1West" ("1West"), and Spark Financial LLC ("Spark Financial"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1.    Plaintiff brings this class action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies under the Telephone Consumer Protection Act ("TCPA") resulting from the unlawful actions of each Defendant.

2.    In violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations, 47 C.F.R. § 64.1200 *et seq.*, as well as violations of the South Carolian Consumer Telephone Privacy Act ("SCCTPA") multiple telemarketing

1

communications, soliciting goods or services, were initiated by each Defendant or on their behalf, to Plaintiff and the putative class members' residential telephone numbers, while registered on the National Do Not Call Registry.

3.     More specifically, each Defendant initiated at least <u>Thirty</u> (30) communications to Plaintiff beginning in 2024, which included calls made to a telephone number on the National Do-Not-Call Registry, and repeated calls after a clear request to stop calling.

## BACKGROUND ON THE TCPA

4.     In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

5.     A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6.     The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq*., affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

7.     Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

8.     47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the

2

phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

9.    Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

10.    In fact, in 2021 alone, there were over *five million complaints* from Americans to the FTC about unwanted telemarketing calls.  Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

11.    The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87

(2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

13.     This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

14.     Each Defendant has minimum contacts with South Carolina and availed themselves of this District's jurisdiction by calling Plaintiff on his "803" area code phone number, which is associated with South Carolina.

15.     Specific personal jurisdiction exists, and venue is proper pursuant to 28 U.S.C. §1391(b)(1).

16.     The Plaintiff and the Defendant 1West both reside in South Carolina. And a substantial portion of the acts or omissions at issue occurred within South Carolina's borders.

17.     Each and every Defendant purposely availed themselves of the jurisdiction of South Carolina when they initiated calls directed at the Plaintiff's phone number in South Carolina. All calls were made by each Defendant or on their behalf and for their benefit.

**PARTIES**

18.     Plaintiff, Brian Simon is currently a citizen and resident of Chapin, South Carolina.

19.     Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

20.     Each and every named Defendant is a "person" as that term is defined by 47 U.S.C. §153(39).

21.     The nature of each and every Defendant's business is the same, which involves the sale of products and services associated with financial planning, lending and consulting.

22.     Defendant Zip Capital Group LLC is a business entity registered with the California Secretary of State, and with a headquarters or principal address located at 26 Executive Park, Suite 100, Irvine CA 92614.

23.     Defendant Zip Capital maintains a website at https://zipcapitalgroup.com/ and a LinkedIn page at https://www.linkedin.com/company/zip-capital-group/. According to their website, the nature of the Zip Capital's business involves the provision of "financing to small and medium-sized businesses in all industries…by offering a combination of capital, our expertise and a variety of products and services to help [] clients meeting their funding goals."

24.     Defendant GreenVine Group is a foreign business entity with a headquarters or principal address located at 3 Blackberry Hill St. Dublin, Ireland D18 D0F7.

25.     Defendant     GreenVine     Group     maintains     a     website     at https://www.greenvinegrp.com/          and          a          LinkedIn          page          at https://www.linkedin.com/company/greenvine-group/.     Greenvine's     website     states     that "GreenVine is a prominent holding company that acquires and operates a distinguished group of companies. When it comes to selling your business, we understand that it is a momentous decision. Owners and founders of businesses place their trust in GreenVine to assist them in achieving their long-term goals and preserving their legacy."

26.     Defendant Tenthly LLC is a business entity registered with the Florida Department of State, and with a headquarters or principal address located at 200 E Las Olas Blvd, Floor 14, Suite 1426, Fort Lauderdale, Florida 33301.

27.     Defendant Tenthly LLC maintains a website at https://www.tenthly.com/ and a LinkedIn page at https://www.linkedin.com/company/tenthly/.  On their LinkedIn page, Tenthly

professes that "[a]t Tenthly, we specialize in providing fast and reliable cash advance solutions to help businesses manage their financial needs and seize growth opportunities."

28.    Defendant Jaydee Ventures, LLC a/k/a "1West" is a business entity registered domestically with Delaware Secretary of State, and registered with the South Carolina Secretary of State, having a registered agent located at 6650 Rivers Avenue, Ste. 100 Charleston, SC 29406.

29.    Defendant 1West maintains a website at https://www.1west.com/ and a LinkedIn page at https://www.linkedin.com/company/1west/. According to their website, 1West uses an "Automated Business Lending Engine (ABLE)" to receive many business financing offers quickly, adding: "There's the 1West way to get smart financing fast — and there's everything else. We believe in your small business, and we believe in our approach."

30.    Defendant Spark Financial is a business entity registered with the California Secretary of State, and with a headquarters or principal address located at 2439 Haverhill Drive Los Angeles, CA 90065.

31.    Defendant Spark Financial maintains a website at https://www.sparkfinancial.co/ and a LinkedIn page at https://www.linkedin.com/company/spark-financial-plan/. According to their website, "Spark Financial was born out of the desire to assist individuals from all financial backgrounds align their finances and values to achieve a more fulfilling and purpose-driven future."

32.    Defendant Amerifi Capital Group is a business entity registered with the Florida Department of State, and with a headquarters or principal address located at 20200 W Dixie Hwy Miami, FL, 33180.

33.    Defendant Amerifi Capital Group maintains a website at https://www.amerificapitalgroup.com/. On their website, Amerifi states: "We're proud to have

provided more than 750 million in small business loans to thousands of businesses nationwide. We are dedicated to ensuring our clients get the right working capital solutions for their business."

34.     Each and every named Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

35.     Defendants acted in concert and as a joint enterprise at all times relevant to this matter. Individuals, on behalf of the Defendants, were and are at all relevant times, acting as all Defendants' actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants. Each of these allegations are "alternative" theories of liability whenever not doing so would result in a contradiction with the other allegations.

## FACTUAL ALLEGATIONS

36.     Over a course of months, the Plaintiff Brian Simon received many text messages from many different phone numbers. The similarity in typeface, syntax, content and language between each of the text messages was so substantially and therefore Plaintiff originated from the same lead source.

37.     At all times relevant hereto, Mr. Simon is and was the customary user of a residential cellular telephone, the number for which was 803-XXX-0088 ("the 0088 Number").

38.     Area code 803 is a telephone area code in the North American Numbering Plan corresponding to the central portion of South Carolina.

39.     Plaintiff registered the 0088 Number on the National Do Not Call Registry ("NDNCR") on October 21, 2005.

40.     Plaintiff registered the 0088 Number on the NDNCR to gain the protections of the NDNCR, including the benefit and attainment of solitude from invasive, unwanted, annoying, and irritating telemarketing calls.

41.     Plaintiff's subject cell phone number was registered to Plaintiff as an individual and not to a business, and Plaintiff used the subject cell phone number primarily for residential purposes, including personal communication between family and friends, and other common domestic consumer uses.

42.     As described in greater detail below, Plaintiff received multiple calls from various phone numbers. The nature of these calls were telemarketing communications, soliciting services related to lending and financing.

43.     At least between May 1, 2024, and August 30, 2024, each Defendant engaged in and contributed to a telemarketing campaign directed toward Plaintiff in furtherance of efforts to sell him capital financing and any related services, which were at all times unwanted and unneeded by Plaintiff.

44.     During that time, Plaintiff was not seeking capital financing and was satisfied with his current means of obtaining credit.

45.     Plaintiff did not provide express written consent or any consent for these calls.

46.     Plaintiff did not have any existing or established business relationship with the Defendants prior to the telemarketing campaign.

47.     Plaintiff repeatedly expressed that he was not interested in the products and services offered by replying "STOP" to multiple received calls. Plaintiff replied "STOP" on at least five occasions.

48.     All calls may have an identical source from which they were initiated. Every call Plaintiff received was substantially similar if not identical to other calls received, regardless of which Defendant may be expressly mentioned by name. And there is little, if any, meaningful distinction between calls made for the benefit of one named Defendant or another named Defendant.

49.     All calls received included an [animated] image followed by a string of text. The text often identified the name of the business, and either a phone number to call or a hyperlinked website to visit.

50.     On May 1, 2024, Plaintiff received an unsolicited text message from the number (541) 787-5710 on behalf of Spark Financial, which reads:

> Please call a Spark Financial advisor at 888-316-0888 to apply or if you have any questions.

51.     The same day, Plaintiff promptly responded "STOP."

52.     Despite sending a request to "stop" and receiving confirmation that "you will not receive any more messages from us," Plaintiff received another unsolicited text message from the number (541) 787-5710 on June August 9, 2024, which reads:

> Hi Brian, please phone a Greenvine representative at (888) 909-8583 to learn more or if you have any questions.

53.     Plaintiff therefore received two substantially similar text messages from the same phone number, each soliciting services from Spark Financial and Greenvine, suggesting these messages were sent on their behalf by an agent which is common to both Parties.

54.     On June 12, 2024, Plaintiff received an unsolicited text from the number (707) 349-0638 on behalf of Greenvine, which reads:

> Good afternoon Brian, please phone a Greenvine advisor at (888) 909-8583 to learn more or if you have any questions.

55.     The same day, Plaintiff responded "STOP."

56.     On June 17, 2024, Plaintiff received an unsolicited text from the number (707) 498-8744 on behalf of Greenvine, which reads:

> Hello Brian, please phone a Greenvine representative at 888-503-7077 to learn more or if you have any questions.

57.     The same day, Plaintiff responded "STOP."

58.     Despite sending a request to "stop," Plaintiff received two additional unsolicited text messages from the number (707) 498-8744 on June 27, 2024 and July 1, 2024, each identifying Greenvine by name.

59.     In total, Plaintiff received 14 messages that directly identified Greenvine, all substantially similar to those described *supra*.

60.     On June 14, 2024, Plaintiff received an unsolicited text from the number (707) 498-6172, which reads:

> Hello Brian, please reach out to a Tenthly representative at 888-865-8938 to learn more or if you have any inquiries.

61.     The same day, Plaintiff promptly responded "STOP."

62.     On Jun 25, 2024, despite sending a request to "stop," Plaintiff received an additional unsolicited text message from the number (707) 498-8744, which reads:

> Good Morning Brian, please call a Tenthly account manager at 888-855-0878 for more details or if you have any inquiries.

63.     On June 18, 2024, Plaintiff received an unsolicited text from the number (541) 420-1411, which reads:

> Hi Brian, please call a Tenthly representative at 888-508-8303 to learn more or if you have any inquiries.

64.     The same day, Plaintiff promptly responded "STOP."

65.     On Jun 28, 2024, despite sending a request to "stop," Plaintiff received an additional unsolicited text message from the number (541) 420-1411, which reads:

> Good Afternoon Brian, please call a Greenvine representative at 888-778-7737 to learn more or if you have any questions.

66.     Plaintiff therefore received two substantially similar text messages from the same phone number, each soliciting services from Tenthly and Greenvine, suggesting these messages were sent on their behalf by an agent which is common to both Parties.

67.     On August 27, 2024, Plaintiff received an unsolicited text message from the number (707) 349-3719 on behalf of 1West, which reads:

> Hi Brian, quick & simple  application. Compare rates from multiple lenders to receive the lowest rate offer at 1west.cloud/zuvih

68.     On August 30, 2024, Plaintiff received an unsolicited text message from the number (541) 787-5710 on behalf of 1West, which reads:

> Hi Brian, 1West offers a quick & simple online app process. Compare offers from multiple lenders and select the best rate at: https://1west.cloud/6r0qi. Reply: stop to end

69.     Tapping on the associated image for these calls opens an animated series of images, or slideshow, prominently displaying the name "1WEST" and describing *inter alia* credit limits and interest rates—which relate to financial products and services. The final image or slide includes a "DISCLAIMER" which provides a clear association between 1West and Greenvine, to wit:

"This message is proprietary to Greenvine Financial and is intended solely for the use of the individual to whom it is addressed.



70.    Plaintiff also received other text messages which do not directly reference any named party, but are substantially and semantically similar, indicating they derive from a source common to all other text messages.

71.    Plaintiff received a total of <u>Thirty</u> (30) communications initiated by or on behalf of each and every named Defendant.  A description of those calls made to Plaintiff are as follows:

| Date | Time | Calling Number | Name or Title Referenced | Phone Number Referenced | Reply "Stop"? |
|------|------|----------------|--------------------------|-------------------------|---------------|
| 05.01.24 | 4:07 PM | 918.638.0979 | Spark Financial | 888.316.0888 | YES |
| 06.12.24 | 5:21 PM | 707.349.0638 | Greenvine | 888.909.8583 | YES |
| 06.14.24 | 11:35 AM | 707.498.6172 | Tenthly | 888.865.8938 | YES |
| 06.17.24 | 12:33 PM | 707.498.8744 | Greenvine | 888.503.7077 | YES |
| 06.18.24 | 3:33 PM | 541.420.1411 | Tenthly | 888.508.8303 | YES |
| 06.25.24 | 11:06 PM | 707.498.6172 | Tenthly | 888.855.0878 | |
| 06.27.24 | 5:58 PM | 707.498.8744 | Greenvine | 888.778.7737 | |

| 06.28.24 | 4:03 PM | 541.420.1411 | Greenvine | 888.778.7737 | |
| 07.01.24 | 12:14 PM | 707.498.8744 | Greenvine | 888.778.7737 | |
| 07.01.24 | 1:30 PM | 707.650.5187 | Greenvine | 888.778.7737 | |
| 07.09.24 | 5:18 PM | 541.815.8606 | Greenvine | 888.807.6880 | |
| 07.16.24 | 4:37 PM | 541.815.8606 | representative | 888.778.7737 | |
| 07.19.24 | 1:11 PM | 541.815.8606 | Greenvine | 888.909.8583 | |
| 07.22.24 | 11:16 AM | 949.828.1382 | specialist | 888.398.2314 | |
| 07.31.24 | 12:39 PM | 707.349.0240 | Greenvine | 888.778.7737 | |
| 07.31.24 | 11:21 AM | 949.782.7410 | specialist | 888.398.2314 | |
| 07.31.24 | 11:22 AM | 949.782.7410 | specialist | 888.398.2314 | |
| 08.01.24 | 3:40 PM | 707.349.4928 | advisor | 888.778.7737 | |
| 08.01.24 | 11:34 AM | 707.349.4928 | advisor | 888.778.7737 | |
| 08.01.24 | 3:25 PM | 949.704.5190 | specialist | 888.398.2314 | |
| 08.01.24 | 3:28 PM | 949.828.1382 | specialist | 888.398.2314 | |
| 08.02.24 | 11:51 AM | 541.815.8606 | Greenvine | 888.807.6880 | |
| 08.06.24 | 11:33 AM | 541.815.8606 | rep | 888.778.7737 | |
| 08.08.24 | 2:17 PM | 707.349.4928 | advisor | 888.778.7737 | |
| 08.09.24 | 12:01 PM | 918.638.0979 | Greenvine | 888.909.8583 | |
| 08.13.24 | 4:12 PM | 707.349.0240 | Greenvine | 888.778.7737 | |
| 08.16.24 | 1:47 PM | 707.349.1068 | Greenvine | 888.778.7737 | |
| 08.27.24 | 2:52 PM | 707.349.3719 | 1west | 1west.cloud/zuvih | |
| 08.29.24 | 12:03 PM | 707.349.0458 | Greenvine | 888.508.5060 | |
| 08.30.24 | 1:07 PM | 541.787.5710 | 1west | 1west.cloud/6r0qi | |
| 10.22.24 | 12:18 pm | 949.828.1382 | account manager | 888.398.2314 | |
| 10.22.24 | 12:18 pm | 949.828.1382 | account manager | 888.398.2314 | |
| 10.22.24 | 12:18 pm | 949.828.1382 | account manager | 888.398.2314 | |
| 10.22.24 | 12:18 pm | 949.828.1382 | account manager | 888.398.2314 | |
| 10.22.24 | 12:18 pm | 949.828.1382 | account manager | 888.398.2314 | |
| 10.22.24 | 12:18 pm | 949.828.1382 | account manager | 888.398.2314 | |
| 10.22.24 | 12:18 pm | 949.828.1382 | account manager | 888.398.2314 | |
| 10.22.24 | 12:18 pm | 949.828.1382 | account manager | 888.398.2314 | |
| 10.22.24 | 12:21 pm | 949.416.0160 | AJ w/ Zip Capital | 888.398.2314 | |

72.    Upon information and belief, Plaintiff received additional text messages from Defendants not listed above.

73.    On October 22, 2024, Plaintiff received eight (8) texts messages in a row, all at the same time. These were followed by another text message from (949) 416-0160 which stated: "AJ here w/ Zip Capital. This is my direct line. Let me know if you need anything. Thanks!"

74.    On July 9, 2024, Plaintiff dialed (888) 398-2314, the number provided in multiple text messages on multiple dates (*supra*). The called/answering party self-identified as being "with Amerifi. After a brief conversation, Plaintiff's call was transferred to "Alicia."

75.    On July 9, 2024, Plaintiff received two phone calls from "Alicia" on behalf of Zip Capital Group. After the first phone call disconnected, the calling party again initiated a phone call to the Plaintiff and left a voicemail where she again identified herself as "Alicia with Zip Finance." After leaving the voicemail, the calling party sent a follow up email that identified her full name and "ZIP CAPITAL GROUP" as well as her email "@zgcdirect.com". A true and accurate copy of that email is inserted hereafter.



76.     Zip Capital Group's website[1] displays and confirms an identical web domain for their company's email addresses, providing "Email: info@zcgdirect.com" as their preferred method of contact.

77.     All these calls were made directly by or on behalf of the Defendants, and for their benefit.

78.     These communications were not made for "emergency purposes," but rather for solicitation purposes.

79.     The Plaintiff knew these telemarketing communications were for solicitation purposes because the calling parties expressly described the financial products and services they were soliciting.

80.     Plaintiff found the telemarketing communications received to be annoying, irritating, and disruptive.

81.     As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that their privacy has been invaded by the Defendants.

82.     The foregoing acts or omissions were in violation of the TCPA.

## Direct Liability, Vicarious Liability and Joint Enterprise Liability

83.     Without having had the benefit of discovery to show otherwise, Plaintiff understands Defendants are directly liable for the unsolicited communications at issue because they were placed or made directly by the Defendants.

---

[1] https://zipcapitalgroup.com/contact-us/

84.    Alternatively, if discovery reveals that some or all of the communications were made by third-party(ies) on behalf of the Defendants, then the Defendants are vicariously liable for those communications.

85.    Plainly, the TCPA statute expressly permits liability for violative calls made "by or on behalf of the same entity". 47 USC § 227(c)(5).

86.    On May 9, 2013, the FCC determined that contracting with other entities to perform the telemarketing activities was not a basis for avoiding liability, as written within a Declaratory Ruling which held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 FCC Rcd 6574 at 6588 (F.C.C. May 9, 2013) (internal citations omitted).

87.    Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, and rejected the assertion that a seller's liability requires a finding of formal actual agency or immediate direction and control over third parties who place a telemarketing call. *Id*., at 6587 n. 107.

88.    The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.,* at 6593.

89.    Plaintiff sensibly inferred the telemarketing communications received were from or on behalf of the Defendants because the calls explicitly communicated an interest and effort to sell Plaintiff financial products and services, such as the extension of lines of credit.

90.    Plaintiff reasonably inferred the telemarketing communications received were from or on behalf of the Defendant Zip Capital because Plaintiff received a call, voicemail and follow up email directly from "Alicia" at "Zip Capital Group."

91.    Plaintiff reasonably inferred the telemarketing communications received were from or on behalf of the Defendant Greenvine because Plaintiff received multiple calls which expressly identified Greenvine by name. Calls made by 1West, Tenthly, and Spark Financial were made for the benefit of Greenvine.

92.    Plaintiff reasonably inferred the telemarketing communications received were from or on behalf of the Defendant Tenthly because Plaintiff received multiple calls which expressly identified Tenthly by name. Calls made by Tenthly were made for the benefit of Greenvine because substantially and semantically similar calls received from the same phone number identified both Tenthly and Greenvine.

93.    Plaintiff reasonably inferred the telemarketing communications received were from or on behalf of the Defendant 1West because Plaintiff received multiple calls which expressly identified 1West by name. Imbedded within the information transmitted to the Plaintiff was a Disclaimer which identified an association between 1West and Greenvine.

94.    Plaintiff reasonably inferred the telemarketing communications received were from or on behalf of the Defendant Spark Financial because Plaintiff received a call which expressly

identified Spark Financial by name. Calls made by Spark Financial were made for the benefit of Greenvine because substantially and semantically similar calls received from the same phone number identified both Spark Financial and Greenvine.

95.     Defendants may have hired, encouraged, permitted, or enjoyed the benefits of mass telemarketing by third-party telemarketers that are currently unknown to Plaintiff and only known to the Defendants.

96.     Defendants' third-party telemarketers had actual and/or apparent authority to act on their behalf.

97.     Defendants ratified the violations of the TCPA by its agents by accepting leads and deriving profit from sales imitated by unlawful robocalls.

98.     Defendants acted as a principal to telemarketing agent(s) whose identity or identities are unknown at this time.

99.     Defendants are not permitted under the law to outsource or contract their way out of liability by directing and benefitting from its agents' TCPA violations.

100.    For the counts identified below, to the extent the Defendants initiated one or more unlawful communications directly, then the Defendants are directly liable for each violative call.

101.    Alternatively, for the counts identified below, to the extent any call was made by a third-party agent or entity acting on the Defendants' behalf, then the Defendants are vicariously liable, for encouraging or benefitting from the violative conduct of such an agent or entity.

102.    In the alternative and/or in addition to theories of direct and vicarious liability set forth above, Plaintiff alleges joint enterprise liability against Defendants.

103.    Defendants acted in concert, by agreement or by approval after the fact, and as a joint enterprise at all times relevant to this matter.

104.    Defendants had a community of interest in telemarketing financial products and services to the Plaintiff and others by phone.

105.    Defendants acted in concert when they arranged to solicit and initiate calls telemarketing their financial products and services to the Plaintiff and others, including for the extensions of lines of credit.

106.    The Defendants were part of a common design to use substantially similar telemarketing messages to repeatedly solicit their financial products and services, including the use of animated messages, hyperlinked websites, callback phone numbers, and the mention of contacting a representative or advisor for further assistance and information.

107.    Defendants knew that the conduct accomplished by them or on their behalf was a breach of duty to Plaintiff and others in violating the TPCA.

108.    Defendants gave substantial assistance in accomplishing the tortious result, including by providing compensation for generating customers pursuant to telemarketing and by providing instructions or scripts on how or how not to solicit their financial products and services.

109.    Defendants adopted or ratified the acts of the others or their vendors for their own benefit.

110.    Defendants are therefore jointly and severally liable for the resulting damage to Plaintiff and the putative class.

## **CLASS ALLEGATIONS**

111.    Plaintiff brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

112.    Plaintiff seeks to represent the following classes:

**Internal Do-Not-Call Registry (IDNC) Class:** All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, during which time Defendants had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

**Do-Not-Call Registry (DNC) Class:** All persons in the United States where: (1) the person's telephone number was registered on the National Do-Not-Call Registry for 31 or more days; (2) the person's number was registered to an individual rather than a business; (3) the person received two or more calls were on behalf of the Defendants within twelve months; and (4) those calls were for the purpose of soliciting Defendants products and/or services, from four years prior to the filing of this Complaint through the date a class is certified.

**South Carolina Telephone Privacy Protection Act (SCTPPA) Class**: All persons who resided in South Carolina and/or had area codes associated with South Carolina, who received two or more calls within a 12 month period after his or her number was registered on the National DNC for 31 days or more.

113.    Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

114.    The putative class members' identities are readily ascertainable from each Defendant's records or records within each Defendant's control.

115.    Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

116.    Plaintiff will fairly and adequately protect the interests of the class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor his attorneys have any interests which might cause them not to vigorously pursue this action.

117.    This action has been brought, and may properly be maintained, as a class action

pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

118.    Class members are so numerous and the individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

119.    Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to the following:

     a.  Whether the Defendants, or someone acting on their behalf, initiated solicitation calls to cell phones of Plaintiff and the putative class members without obtaining the recipients' prior express written consent;

     b.  Whether the Defendants' conduct violates 47 U.S.C. §§ 227(c) and the corresponding rules and regulations implementing the TCPA; and; and

     c.  Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of the Defendants' conduct.

120.    Plaintiff and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly initiating calls to the Plaintiff and the putative class members.

121.    Plaintiff will fairly and adequately protect the interests of the class members and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

122.    The class action mechanism is superior to other available means for the fair and

efficient adjudication of this case. Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish each Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of each Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

123.    This District is an appropriate forum in which to adjudicate this dispute.

124.    Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, modify definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23.  Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

**COUNT I**
**DEFENDANTS VIOLATED 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c)**

125.    Plaintiff incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

126.    Defendant made, or had made on its behalf, telephone calls constituting telephone solicitations to Plaintiff and the putative class members.

127.    Plaintiff and the putative class members' telephone numbers were registered on the NDNCR at the time of the calls.

128.     Plaintiff and the putative class members each received two or more such calls in a 12-month period.

129.     Accordingly, Defendant violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(5) and the TCPA's corresponding regulations.

130.     Defendant knew or should have known that Plaintiff and the putative class members had their numbers registered on the Do Not Call Registry.

131.     Plaintiff and the putative class members are entitled to an award of $500.00 in statutory damages for each call placed by Defendant.

132.     Plaintiff and the putative class members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## COUNT II
## DEFENDANTS VIOLATED 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(d)

133.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

134.     Plaintiff brings this Count individually and on behalf of all others similarly situated.

135.     Section 227(c) of the TCPA requires the FCC to enact regulations to protect residential telephone subscribers' privacy rights. The TCPA provides a private right of action for failing to maintain and/or provide internal do-not-call policies. 47 U.S.C. § 227(c)(5).

136.     Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber s name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity mav be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d), (e).

137.     Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendants, and/or did not record such requests. Even after Plaintiff clearly expressed his desire not to receive any more telephone calls from Defendants, Defendants made two or more calls to Plaintiff, in order to make further solicitations, as described above. Defendants continue to make telemarketing calls while they fail to honor consumer requests not to receive calls from or on behalf of Defendants.

138.     Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) by making telemarketing calls while they did not have a written policy for maintaining a do-not-call list, and/or such policy was not available upon demand. Defendants continue to make telemarketing

calls when they either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

139.    On information and belief, and in addition or in the alternative, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendants claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendants failed to adequately train their personnel.

140.    Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which concealed the name of the individual caller, Defendants' names, and a telephone number at which Defendants could be contacted. Specifically, Defendants' spoofed the outgoing telephone numbers used to call IDNC Class members, and/or their telemarketers fail to identify Defendants until after the telemarketer assesses the call recipients' interest in Defendants' solicitations.

141.    Defendants violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

142.    Defendants violated Plaintiffs rights under § 227(c) and CFR § 64.1200(d) through the aforementioned acts and omissions.

143.     Defendants' violations were knowing and willful because they knew they had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above.

144.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, recklessly, willfully and absent any legal justification or excuse.

145.     Plaintiff and IDNC Class members are entitled to damages of $500.00 per violation for each call placed and text sent by Defendants and up to $1,500.00 per violation if the Court finds Defendants willfully violated the TCPA.

146.     Plaintiff, on behalf of himself, and on behalf of the other IDNC Class members, seeks injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants to stop their violations of the TCPA.

147.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the IDNC Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

**COUNT III**
**DEFENDANTS VIOLATED THE**
**SOUTH CAROLINA TELEPHONE PRIVACY PROTECTION ACT**

148.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

149.     §37-21-70 of the South Carolina Telephone Privacy Protection Act (SCTPPA) prohibits sellers from engaging in telephone solicitations to a purchaser located in this state when that telephone number appears on the National Do Not Call Registry maintained by the federal

government pursuant to the Telemarketing Sales Rule, 16 C.F.R. Part 310, and 47 C.F.R. Section 64.1200.

150.    Defendants violated the SCTPPA when their representatives engaged in continuous and repetitive telephone solicitations of Plaintiff without first having prior express written consent.

151.    Section 37-21-80 of the SCTPPA provides that a person who violates this chapter is subject to a civil penalty of $1,000 for each violation and $5,000 of each willful violation. Furthermore, §37-21-80(c) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

## **Prayer for Judgment**

WHEREFORE, Plaintiff, Brian Simon, individually, and or behalf of all others similarly situated, requests the Court grant the following relief:

a.  Enter an order against Defendant pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Plaintiff as the class representative and appointing his counsel as Class Counsel;

b.  Enter a judgment in favor of Plaintiff and the NDNC and IDNC Class that enjoins Defendants from violating the TCPA's regulations in the manner and/or using the means as alleged above, consistent with proof;

c.  Enter judgment in favor of Plaintiff and the NDNC and IDNC Classes for all damages available under the TCPA, including actual, statutory and punitive damages per violation of 47 U.S.C. § 227(c), consistent with proof;

d.  Award and require the Defendants to pay Plaintiff and the class all reasonable attorneys' fees, witness fees, expenses of class notice and administration, court costs and other litigation costs of this action incurred by Plaintiff available under the TCPA and pursuant to § 37-21-80 of the South Carolina Telephone Privacy Protection Act

e.  Award Plaintiff and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, Brian Simon, demands a jury trial in this case.


Dated:  February 4, 2025

Respectfully submitted,

**POULIN | WILLEY | ANASTOPOULO, LLC**
*/s/ Roy T. Willey, IV*
Roy T. Willey, IV
D.S.C. Bar No.: 11664
32 Ann Street
Charleston, SC 29403
P: (803) 222-2222
roy@poulinwilley.com

**-AND-**

**KIMMEL & SILVERMAN P.C.**

Jacob U. Ginsburg, Esq. (phv forthcoming)
30 E. Butler Ave.
Ambler, PA 19002
Direct Dial: (267) 468-5374
jginsburg@creditlaw.com
teamkimmel@creditlaw.com
*Attorneys for Plaintiffs*